IN THE

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

—————————————

JUSTIN LYTLE AND CHRISTINE MUSTHALER,
*Plaintiffs and Respondents,*

vs.

NUTRAMAX LABORATORIES, INC. AND NUTRAMAX
LABORATORIES VETERINARY SCIENCES, INC.,
*Defendants and Petitioners.*

—————————————

On Appeal from the United States District Court
for the Central District of California
Case No. 5: 19-CV-00835
Honorable Fernando M. Olguin

—————————————

## RESPONSE TO PETITION FOR
## PERMISSION TO APPEAL ORDER GRANTING
## CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(f)

—————————————

Daniel L. Warshaw (SBN 185365)
PEARSON, SIMON & WARSHAW, LLP
15165 Ventura Blvd., Suite 400
Sherman Oaks, CA 91403
 (818) 788-8300
dwarshaw@pswlaw.com
 [Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiffs/Respondents*
*Justin Lytle and Christine Musthaler*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ..................................................................................... 1

FACTUAL BACKGROUND ......................................................................... 3

REASONS TO DENY THE PETITION ......................................................... 6

A. It suffices at the class certification stage to show damages
are "capable of measurement" on a classwide basis ............................... 6

A1. *Olean* does not support Nutramax's position ............................... 6

A2. Lower courts are not split over the question
presented ...................................................................................... 7

B. Plaintiffs met their Rule 23 burden by identifying the
expert's model without conducting it ................................................... 16

C. There is nothing unique about this case warranting deviation
from *Comcast* ................................................................................... 17

CONCLUSION .......................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Bailey v. Rite Aid Corp.*,
   338 F.R.D. 390 (N.D. Cal. 2021) ...................................................... 5, 10, 12, 17

*Chamberlan v. Ford Motor Co.*,
   402 F.2d 952 (9th Cir. 2005) ........................................................................7

*Comcast Corp. v. Behrend*,
   569 U.S. 27, 133 S. Ct. 1426 (2013) ................................. 1, 5, 10-11, 15, 17, 19

*Culley v. Lincare Inc.*,
   2016 WL 4208567 (E.D. Cal. Aug. 10, 2016) .................................................13

*Di Donato v. Insys Therapeutics*,
   333 F.R.D. 427 (D. Ariz. 2019) .......................................................................13

*Guido v. L'Oreal, USA*,
   2014 WL 6603730 (C.D. Cal. July 24, 2014) ..................................... 14, 17, 19

*Hadley v. Kellogg Sales Co.*,
   324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...........................................................13

*Hemmings v. Tidyman's, Inc.*,
   285 F.3d 1174 (9th Cir. 2002) ........................................................................ 9

*In re ConAgra Foods, Inc.*,
   302 F.R.D. 537 (C.D. Cal. 2014) ................................................................8-11

*In re ConAgra Foods, Inc.*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015) ..........................................................10-11

*In re Optical Disk Drive Antitrust Litig.*,
   2016 WL 467444 (N.D. Cal. Feb. 8, 2016) .....................................................13

*Kingsbury v. U.S. Greenfiber, LLC*,
   No. 08-cv-00151, 2013 WL 7018657 (C.D. Cal. Nov. 5, 2013).......................14

*Lambert v. Nutraceutical Corp.*,
   870 F.3d 1170 (9th Cir. 2017) ...................................................................10-11

*Leyva v. Medline Indus.*,
    716 F.3d 510 (9th Cir. 2013) ......................................................................10-12

*Mulderrig v. Amyris, Inc.*,
    340 F.R.D. 575 (N.D. Cal. 2021) ..................................................................12

*Nguyen v. Nissan N. Am.*,
    932 F.3d 811 (9th Cir. 2019) ........................................................................ 11

*Olean Wholesale Grocery Cooperative v. Bumble Bee Foods*,
    31 F.4th 651 (9th Cir. 2022) ...........................................................6-7, 17, 20

*Ralston v. Mortg. Invs. Grp.*,
    2011 WL 6002640 (N.D. Cal. Nov. 30, 2011) ...............................................14

*Siino v. Foresters Life Ins. & Annuity Co.*,
    340 F.R.D. 157 (N.D. Cal. 2022) ..................................................................12

*Testone v. Barlean's Organic Oils*,
    2021 WL 4438391 (S.D. Cal. Sept. 28, 2021) ...................................... 10-11, 15

*Wendt v. Host Int'l*,
    125 F.3d 806 (9th Cir. 1997) ........................................................................10

## Other Authorities

Federal Rule of Civil Procedue 1..........................................................................15

Federal Rule of Evidence 702.............................................................................. 9

## INTRODUCTION

Defendants urge the Court to permit an appeal to determine whether the Rule 23 preponderance of evidence standard can be satisfied where an expert provides a damages model and methodology for running the model, but does not actually field the model before class certification. Defendants argue that experts must be "required to perform [an] analysis that is admissible" as a prerequisite to certification, and that there is a split among the lower courts. (Pet. at 4.) The petition should be denied because:

- The law already holds—and for good reason—that "under the proper standard for evaluating certification," a plaintiff satisfies Rule 23 by "establishing that damages are *capable of measurement* on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S. Ct. 1426, 1433 (2013) (emphasis added). Plaintiffs have done so and there is no split of authority for this Court to address.

- Defendants' remaining case-specific arguments, including their unfounded contention that Plaintiffs' expert merely "describe[d] a general methodology" for damages, (Pet. at 4), do not advance the larger question and do not justify an interlocutory appeal.

With respect to classwide damages, a plaintiff satisfies Rule 23 by a preponderance of the evidence where her expert identifies the damages model (here, a conjoint survey and analysis), explains its underlying methodology and means of execution, and provides a detailed justification for the model as a whole, including the choice of case-specific variables. Plaintiffs' expert—an economist who teaches at the University of Chicago and performs conjoint analyses both for litigation and private industry—did all of the above. Contrary to Defendants' contention, plaintiffs are not and have never been required to execute a damages model and calculate actual classwide damages at the class certification stage, nor should they be.

Defendants cite a single district court case (while ignoring a subsequent ruling in the same case on this issue) to argue there is a split of authority that, in fact, does not exist. Defendants urge a rule that experts be "required to perform an analysis that is admissible" as a prerequisite to certification. This proposed requirement is at odds with existing law and would prove inefficient, expensive, and impracticable. There is no "unsettled" question on this point for this Court to resolve and, if there were, Defendants have not shown why it should occur by way of the permissive interlocutory appeal Defendants seek.

## FACTUAL BACKGROUND

Plaintiffs claim that Defendants Nutramax Laboratories, Inc., and Nutramax Laboratories Veterinary Sciences, Inc. ("Nutramax") misrepresent the benefits of Cosequin—its glucosamine/chondroitin canine joint health supplement. As the district court's ruling on Nutramax's first motion to dismiss explained: "Plaintiffs' claim is simple: the marketing of Cosequin, which emphasizes the scientific support for the joint health benefits of the product, is false and misleading because studies show Cosequin and its active ingredients have no effect on canine joint health." (Dkt. 52 at 4.) As reflected in the record, the only randomized controlled trial ("RCT") to study Cosequin showed no benefit over placebo, and an RCT of another Nutramax canine product containing the same proprietary glucosamine/chondroitin ingredient as Cosequin also showed no benefit over placebo. (Dkt. 91, Joint Brief on Class Certification at 1.) Nutramax has never conducted an RCT to prove the efficacy of Cosequin or its proprietary active ingredient to justify the representations on Cosequin labeling. *Id.*

Although Plaintiffs' Second Amended Complaint encompassed a range of Cosequin products, Plaintiffs sought to certify only a California class regarding four challenged claims on three Cosequin products—including the

product that both Plaintiffs purchased, as shown in the table below. (*See* Dkt. 91 at 2.)

| Nutramax Product | Challenged Label Claims |
|---|---|
| Cosequin DS Maximum Strength Plus MSM Chewable Tablets | • Use Cosequin to help your pet climb stairs, rise and jump!<br>• Joint Health Supplement<br>• Mobility, Cartilage and Joint Health Support |
| Cosequin DS Maximum Strength Plus MSM Soft Chews | • Use Cosequin to help your pet climb stairs, rise and jump!<br>• Joint Health Supplement<br>• Mobility, Cartilage and Joint Health Support |
| Cosequin DS Maximum Strength Chewable Tablets | • Use Cosequin to help your pet climb stairs, rise and jump!<br>• Joint Health Supplement<br>• Supports Mobility for a Healthy Lifestyle |

Nutramax is mistaken that "only one" of the four challenged claims "appeared uniformly on all packages." (Pet. at 2-3, 21-22.) In fact, two of the four challenged claims appeared on all packages ("Use Cosequin to help your pet climb stairs, rise and jump!" and "Joint Health Supplement"). The third claim ("Mobility, Cartilage and Joint Health Support") appeared on two of the three products and was replaced on the third product with the substantively similar fourth claim ("Supports Mobility for a Healthy Lifestyle").

Plaintiffs retained Dr. Jean-Pierre Dubé to devise and—if certification were granted, to execute—a conjoint survey and analysis to determine the extent to which the challenged label claims impacted consumers' willingness to pay for the products.[1] Dr. Dubé's report details his qualifications; the basis for his opinion that damages are capable of determination on a classwide basis; the method to determine those damages—including detailed descriptions of his conjoint survey and market simulation methods specific to the challenged products and challenged label claims; and the economic justifications for his methodology. (Dkt. 92 at 36-38 – "Proving Damages on a Classwide Basis" & Dkt. 101-1, Ex. 2 – Expert Report of Dr. Jean Pierre Dubé.) Nutramax did not challenge Dr. Dubé's qualifications given his vast experience in designing and fielding conjoint surveys, both in litigation and for private industry. (Dkt. 125 at 14.) It challenged various aspects of his methodology under *Daubert* (Dkt. 112, 125) and the district court denied its motion in its order granting class certification. (Dkt. 146 at 5, 9-11.)

---

[1] "In mislabeling cases where the injury suffered by consumers was in the form of an overpayment resulting from the alleged misrepresentation at issue … courts routinely hold that choice-based conjoint models that are designed to measure the amount of overpayment satisfy *Comcast*'s requirements." *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 409 (N.D. Cal. 2021).

## REASONS TO DENY THE PETITION

**A. It suffices at the class certification stage to show damages are "capable of measurement" on a classwide basis.**

Nutramax advances two arguments to assert that Plaintiffs were required to perform the conjoint survey and analysis before class certification: (1) that the Court's ruling in *Olean Wholesale Grocery Cooperative v. Bumble Bee Foods*, 31 F.4th 651 (9th Cir. 2022) (en banc), left this issue unaddressed and unresolved; and (2) that a split exists between lower courts within the Ninth Circuit on this issue. Neither argument supports a grant of Nutramax's petition.

A1. *Olean* does not support Nutramax's position.

Nutramax first argues that *Olean* left unanswered the question of whether damages analyses must be performed before class certification because, unlike here, the experts in *Olean* performed their analyses before certification. (Pet. at 2) (citing *Olean*). But the question of whether an expert is obliged to perform a damages analysis pre-certification was not before the *Olean* court. There is nothing to suggest it would have denied certification had the analyses not been performed, or that it would otherwise have questioned the many district court precedents certifying classes without

requiring experts to perform damages analyses beforehand. Indeed, the *Olean* court observed that the "district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." 31 F.4th at 667 (emphasis in original). In short, the *Olean* court did not fail to settle a question of such importance and urgency that an interlocutory appeal is required here. The question raised here was not before it. And even if it were true that Nutramax "presents an unsettled and fundamental issue of law relating to class actions," it fails entirely to address why this issue "is likely to evade end-of-the-case review." (Pet. at 10-11) (quoting *Chamberlan v. Ford Motor Co.*, 402 F.2d 952 (9th Cir. 2005)).

A2. Lower courts are not split over the question presented.

Nutramax's second argument fails because the caselaw is clear and consonant: an expert need not carry out a damages analysis before class certification if the evidence shows by a preponderance that damages are *capable of* measurement on a classwide basis. Nutramax approaches the issue as if the only evidence to satisfy this burden is the damage calculation itself. This ignores the obvious: the expert's model—including the methodology, the facts considered in carrying it out, and the expert's related testimony—

all constitute "admissible evidence." That the eventual results of the analysis also constitute evidence does not change this. Thus, plaintiffs can prove by a preponderance of "admissible evidence" at the class certification stage that damages are "capable of" classwide determination—which is all that is required—without carrying out the survey and analysis. That is precisely what the district court found (applying a preponderance standard) in the certification decision at issue. (Dkt. 146 at 4.)

Nutramax fails to acknowledge caselaw that expressly (and sensibly) allows plaintiffs at the class certification stage to demonstrate the feasibility of a classwide damages model without incurring the time and expense necessary to field the survey itself, which in this case was described in great detail in Dr. Dubé's report and deemed satisfactory by the district court. (Dkt. 101-1, Ex. 2.)

The *ConAgra* opinion is the *only* decision by a court within the Ninth Circuit that Nutramax cites in claiming there is a split of authorities over whether a damages analysis must be carried out in full before a court

entertains a motion for certification.[2] But the *ConAgra* opinion cited by Nutramax is readily distinguishable, and Nutramax omitted a follow-up opinion in *ConAgra* that altered the ruling Nutramax cites and that supports Plaintiffs' position.

The expert in *ConAgra* originally was excluded under Rule 702 because he "provide[d] no damages model at all." The court explained: "He does not identify any variables he intends to build into the models, nor does he identify any data presently in his possession to which the models can be applied." *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 552 (C.D. Cal. 2014). None of this can be said of Dr. Dubé, who relies on sales and pricing data he identifies in his report and the variables (including the challenged products and claims) his conjoint analysis would employ.[3] (Dkt. 101-1, Ex. 2.) Nutramax does not claim Dr. Dubé "provided no damages model at all." It argues he should actually run the conjoint survey he proposed while it

---

[2] Nutramax cites three other cases that found conjoint analyses flawed or insufficient, but none held that the conjoint must be performed before certification. (Pet. at 16-17.)

[3] Notably, the *ConAgra* court distinguished the total absence of any data or methodology presented to it from a mere failure to include particular variables, which "will affect the analysis' probativeness, not its admissibility." 302 F.R.D. at 552 (quoting *Hemmings v. Tidyman's, Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002)).

quarrels with his methodology. *See Wendt v. Host Int'l*, 125 F.3d 806, 814 (9th Cir. 1997) ("Challenges to survey methodology go to the weight given the survey, not its admissibility.")

Omitted from Nutramax's petition is the fact that the *ConAgra* court subsequently ruled on the plaintiffs' amended motion for certification and found that the excluded expert's analysis, in tandem with another expert's "proposed conjoint analysis," satisfied *Comcast* because the analyses were "capable of calculating damages attributable to plaintiffs' specific theory of liability on a classwide basis." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1025-27 (C.D. Cal. 2015). This is consistent with Plaintiffs' position and nullifies Nutramax's claim of an "unsettled and fundamental" split that this Court needs to resolve through interlocutory appeal. Indeed, subsequent opinions on the issue have expressly considered *ConAgra* and concluded that experts who show that damages are capable of classwide determination are not required to perform their damage calculations before certification. For example, in *Testone v. Barlean's Organic Oils*, No. 19-CV-169 JLS (BGS), 2021 WL 4438391 at *4 (S.D. Cal. Sept. 28, 2021), the court considered both *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390 (N.D. Cal. 2021), which found that "[a] plaintiff is not required to actually execute a proposed conjoint

analysis to show that damages are capable of determination on a class-wide basis with common proof," and *ConAgra* before concluding:

> [T]he Court finds determinative the U.S. Supreme Court's statement in *Comcast* that a plaintiff need only show that "damages are capable of measurement." There is nothing in the opinion to suggest that the damages calculation must be performed at the class certification stage. Accordingly, the Court concludes that the fact that Plaintiffs have not conducted the conjoint analysis is not "fatal" to their ability to satisfy Rule 23(b)(3).

*Testone,* 2021 WL 4438391 at *17 (internal citations omitted).

This is consistent with virtually every other related decision from the Ninth Circuit and lower courts within the Ninth Circuit, which uniformly hold that plaintiffs are *not* required to perform a proposed damages analysis before class certification so long the methodology shows that damages are capable of measurement on a classwide basis:

Ninth Circuit

- *Nguyen v. Nissan N. Am.*, 932 F.3d 811, 817 (9th Cir. 2019) ("[U]ncertainty regarding class members' damages does not prevent certification of a class as long as a *valid method* has been proposed for calculating those damages.") (quoting *Lambert v. Nutraceutical*

*Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017)), *rev'd on other grounds*, __ U.S. __, 139 S. Ct. 710 (2019) (emphasis added).

- *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013) (defendant's "computerized payroll and time-keeping database would enable the court to accurately calculate damages and related penalties for each claim.... [D]amages could feasibly and efficiently be calculated once the common liability questions are adjudicated.")

Lower Courts Within the Ninth Circuit

- *Siino v. Foresters Life Ins. & Annuity Co.*, 340 F.R.D. 157, 160 (N.D. Cal. 2022) (certification denied because plaintiff failed to "identify a damages model *capable of measuring* damages on a classwide basis.") (emphasis added).

- *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 409 n.14 (N.D. Cal. 2021) ("A plaintiff is not required to actually execute a proposed conjoint analysis to show that damages are capable of determination on a class-wide basis with common proof.")

- *Mulderrig v. Amyris, Inc.*, 340 F.R.D. 575, 591 (N.D. Cal. 2021) ("[T]he Court finds that plaintiffs have sufficiently shown damages are capable of measurement on a classwide basis ... The widely

accepted out-of-pocket methodology, described above, can be applied using a common formula for the entire class.")

- *Di Donato v. Insys Therapeutics*, 333 F.R.D. 427, 446 (D. Ariz. 2019) ("At the class certification stage, the plaintiffs need only present a *workable method* for calculating damages on a classwide basis that is consistent with their theory of liability.") (emphasis added).

- *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) (accepting expert's "*proposed* conjoint analysis" in support of certification motion) (emphasis added).

- *Culley v. Lincare Inc.*, No. 215CV00081MCECMK, 2016 WL 4208567 at *2 (E.D. Cal. Aug. 10, 2016) ("[T]he Ninth Circuit has held that at the class certification stage, plaintiffs need only propose a valid method for calculating class-wide damages, not an actual calculation of damages.") (citing *Leyva*, 716 F.3d at 514).

- *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143 RS, 2016 WL 467444 at *7 (N.D. Cal. Feb. 8, 2016) (certification granted where expert "presented theories that explain why, in his view, class-wide impact would have existed, and he has offered

means for testing the data to demonstrate that it did, and to calculate what he believes the overcharges were…. [T]he IPPs have now made an adequate showing of a methodology for proving antitrust injury to all or nearly all direct purchasers, on a class-wide basis.")

- *Guido v. L'Oreal, USA*, No. 2:11-CV-01067-CAS, 2014 WL 6603730 at *8 (C.D. Cal. July 24, 2014) ("[P]laintiffs need not show on class certification that they paid a premium… Instead, they must merely provide a method for calculating that premium on a classwide basis.")

- *Kingsbury v. U.S. Greenfiber, LLC*, No. CV0800151DSFAGRX, 2013 WL 12114077 at *4 (C.D. Cal. Nov. 5, 2013) (recognizing plaintiff's "burden to provide a model *capable of measuring* restitution on a classwide basis," but decertifying class for plaintiff's failure to establish that restitution values "can be calculated") (emphasis added).

- *Ralston v. Mortg. Invs. Grp.*, No. 08-536-JF PSG, 2011 WL 6002640 at *10 (N.D. Cal. Nov. 30, 2011) (motion to exclude expert whose damage model lacked specific variables denied because the expert presented "a structure or framework to analyze the actual

loan data eventually provided to plaintiffs" and testimony admitted "for the purpose of demonstrating a method for assessing class-wide damages").

Grasping for supportive decisions, Nutramax cites non-binding cases from circuits that have no bearing on the instant case. Significantly, Nutramax's cited cases pre-date the Supreme Court's ruling in *Comcast* which, as indicated by the *Testone* court, is the focal point on this issue. (Pet. at 15-16.) Contrary to Nutramax's arguments, there is no split among lower courts requiring an interlocutory appeal in the present case.

This unanimous view comports with common sense and the mandate to construe the rules so as to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. The issue before a district court at the class certification stage is *whether* damages may be calculated on a classwide basis, not *what* the damages are or will turn out to be. In this case, Plaintiffs challenged four claims on three of Nutramax's products. In conducting its analysis, the district court could have certified a class with respect to all four challenged claims and all three products, some lesser combination of the challenged claims and products, or nothing at all. To require an expensive and time-consuming conjoint survey on products,

claims, and issues not yet certified—some of which might never be certified—would be wasteful and inefficient.

**B. Plaintiffs met their Rule 23 burden by identifying the expert's model without conducting it.**

Nutramax contends the district court could not have conducted a rigorous analysis under Rule 23 without the actual results of Dr. Dubé's fielded damages survey before it (and, apparently, Nutramax ultimately would seek a blanket rule to this effect). (Pet. at 22.) But, as shown above, this is not required, and nothing in the record indicates the district court was incapable of conducting a rigorous analysis without a fielded survey or that the court failed to do so. Rather, the district court penned a thorough and well-reasoned 36-page order granting certification (Dkt. 146) approximately seven months after the Joint Brief on Class Certification (Dkt. 121) was filed and five months after the matter was fully briefed (Dkt. 143). In its order, the district court recognized that "'[a] plaintiff is not required to actually execute a proposed conjoint analysis to show that damages are capable of determination on a class-wide basis with common proof' at the class certification stage." (Dkt. 146 at 10 (quoting *Bailey*, 338 F.R.D. at 408 n. 14)).

Further, the district court expressly cited and considered *Olean* in its order and, accordingly, granted certification only after conducting a rigorous analysis and determining that Plaintiffs had satisfied all Rule 23 requirements by a preponderance of the evidence, including via the submission of Dr. Dubé's thoroughly detailed expert report and proposed damages model. (Dkt. 146 at 9-11, 31-32.)

### C. There is nothing unique about this case warranting deviation from *Comcast*.

Nutramax's next argument tracks its unsuccessful motion to exclude Dr. Dubé's expert report and his detailed explanation of his proposed damages model based upon his not having fielded the conjoint survey pre-certification. (Pet. at 22-28.) As seen above, there is no such requirement. And although Dr. Dubé has not yet determined what the actual damages figure ultimately will be, the determination itself will apply classwide. *See Guido*, 2014 WL 6603730 at *13 ("[A] properly performed RCDE and Conjoint analysis may reveal that there was in fact no extra charge associated with the removal of the flammability warning. But under either scenario, plaintiffs' claims would fail across the board, not plaintiff-by-plaintiff.")

Nutramax argues that there are unique facts that required the district court to depart from the dominant practice and require Dr. Dubé to execute conjoint analysis before a decision on class certification. To this end, Nutramax identifies several purported "issues" as justification for its position that performing the analysis pre-certification was necessary, such as the fact that "this case involves multiple challenged statements." (Pet. at 23.) There is nothing unique about a class action alleging that consumers were exposed to *multiple* misrepresentations by a defendant company. Very few class actions limit their allegations to a *single* misrepresentation, and this contention does not warrant deviating from established precedent and requiring a conjoint survey and analysis be conducted before certification.

The rest of the purported "issues" are essentially baseless hypotheticals and discussion of "what ifs" that necessarily are unknown before a conjoint analysis has been conducted, but in no way undermine its integrity or the classwide applicability of the results it will generate once performed. For example, Nutramax refers to Dr. Dubé's testimony that he does not know what the results of his conjoint analysis will be, and that his

analysis "may or may not be able to show a price premium." (Pet. at 28.)[4]
The analysis could find price or increased willingness-to-pay associated with
all challenged claims, some challenged claims but not others, or none at all.
What matters is that the results would apply "across the board, not plaintiff-
by-plaintiff." *Guido*, 2014 WL 6603730 at *13. Plaintiffs are not required to
answer Nutramax's hypothetical damages queries at this stage. So long as
Dr. Dubé's proposed model is capable of measuring the damages on a
classwide basis, Plaintiffs have satisfied their burden. The model does so, as
the district court found.

The court recognized that "[c]onjoint surveys, like the one proposed
by plaintiffs' expert, are a well-established method for measuring class-wide
damages in CLRA mislabeling cases," (Dkt. 146 at 31) (internal citations
omitted), and pointed out that courts "have also found conjoint analyses
specifically designed by Dubé, and similar to what he proposes here, satisfy
*Comcast*." (*Id.* at 32.) Further, the district court addressed the arguments
raised here and correctly found that "defendants cite no authority

---

[4] Price premium is only one of two metrics for determining classwide
damages, as set forth in rigorous detail by Dr. Dubé. (Dkt. 101-1, Ex. 2 ¶¶ 15-
17, 20-25 & Appx. C ("The Price Premium")).

supporting the proposition that plaintiffs' proposed model is incapable of measuring damages on a class-wide basis." (*Id*. at 32-33.)

## CONCLUSION

Nutramax's Petition fails to support its claim of an "unsettled and fundamental issue on which courts have disagreed." (Pet. at 1.) There is no disagreement among courts in this Circuit on the question presented. Neither *Olean* nor any other authority compels, or even suggests, a different result should obtain here. Even if the Petition had merit, Nutramax has failed to show why its arguments should be addressed now, rather than on plenary appeal. Respectfully, Nutramax's Petition should be denied.

Dated: May 31, 2022

*/s/ Daniel L. Warshaw*
Daniel L. Warshaw (SBN 185365)
PEARSON, SIMON & WARSHAW, LLP
15165 Ventura Blvd., Suite 400
Sherman Oaks, CA 91403
(818) 788-8300
dwarshaw@pswlaw.com

LEVIN PAPANTONIO RAFFERTY
Matthew D. Schultz
316 S. Baylen St., Suite 600
Pensacola, FL 32502
(850) 435-7140
mschultz@levinlaw.com

MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
Daniel K. Bryson
Drew Hathaway
900 W Morgan St
Raleigh, NC 27603
(919) 600-5000
dbryson@milberg.com
dhathaway@milberg.com

MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
Gregory F. Coleman (*pro hac vice*)
Adam A. Edwards (*pro hac vice*)
800 S. Gay St., Suite 1100
Knoxville, TN 37929
(865) 247-0080
gcoleman@milberg.com
aedwards@milberg.com

*Attorneys for Plaintiffs/Respondents*
*Justin Lytle and Christine Musthaler*

## CERTIFICATE OF COMPLIANCE

I am the attorney for Petitioners. This brief contains 3,839 words, excluding

the items exempted by Fed. R. App. P. 32(f). The brief's type size and

typeface comply with Fed. R. App. P. 32(a)(5) and (6), as the brief has been

prepared in a proportional typeface in 14-point Century Supra. I certify that

this brief complies with the limit set forth in Circuit Rule 32-3 because the

word count divided by 280 does not exceed the 20-page limit designated by

Rule 5-2(b).

Dated: May 31, 2022

*/s/ Daniel L. Warshaw*
Daniel L. Warshaw (SBN 185365)
PEARSON, SIMON & WARSHAW, LLP
15165 Ventura Blvd., Suite 400
Sherman Oaks, CA 91403
(818) 788-8300
dwarshaw@pswlaw.com

*Attorneys for Plaintiffs/Respondents*
*Justin Lytle and Christine Musthaler*